595 So.2d 592 (1992)
STATE of Louisiana
v.
Brian MARTIN.
No. 91-K-1105.
Supreme Court of Louisiana.
March 2, 1992.
Sylvia T. Steib, Becnel, Landry & Becnel, Nathan Folse and Phyllis M. Williams, for applicant.
Richard Phillip Ieyoub, Atty. Gen., Anthony Falterman, Dist. Atty. and Donald D. Candell, Asst. Dist. Atty., for respondent.
COLE, Justice.
In this criminal case, the issues before us are: (1) whether the pre-trial, single-photograph identification by an undercover narcotics detective of defendant Brian Martin was made under circumstances which result in a substantial likelihood of irreparable misidentification; (2) whether there was a sufficient independent basis for the detective's subsequent in-court identification; (3) whether sufficient evidence supported the jury's verdict; (4) whether the state's failure to comply with defendant's discovery request violated his right to due process of law; and (5) whether the prison sentence imposed is excessive. Because we conclude the photographic identification was made under circumstances which result in a very substantial likelihood of misidentification, which fatally tainted the subsequent in-court identification, we reverse the defendant's conviction. We believe, however, that under the applicable standard, the evidence as presented to the jury was sufficient to support the jury's verdict and, accordingly, *593 we remand to the trial court for a new trial.

I.
In May 1989, St. Charles Parish Deputy Anthony Akins was on loan to the Sheriff's Office in St. James Parish, assigned to an undercover narcotics detail in Lutcher, Louisiana. According to his police report, Akins purchased a $30 rock of cocaine early in the evening of May 23 from an individual who identified himself as Bryant Morris. Akins described the seller as a black male, dark complexion, 17-20 years old, 5'10" to 6' tall, weighing 135-145 pounds. At the time of the sale, the suspect was wearing jogging pants and no shirt. According to the report, the suspect flagged Akins down as he was driving on West Labray Street in Lutcher. He noted the suspect asked him if he (Akins) was looking for cocaine. Akins responded affirmatively, and the suspect instructed him to drive to the end of the block and wait.
Akins drove to the corner and parked. At approximately 6:35 p.m., the suspect returned and entered the vehicle. At this time, Akins learned the suspect's name was Bryant Morris. The suspect gave Akins the cocaine, and Akins gave the suspect $30. The suspect then exited the vehicle.
Subsequently, in September 1989, a grand jury indicted defendant Brian Martin on a charge of distribution of cocaine in violation of La.Rev.Stat. § 40:967(A)(1). Akins alleged Martin was the suspect who had identified himself as Bryant Morris and sold him the cocaine on May 23.
Martin filed a motion to suppress Akins's identification of Martin as the suspect who had sold the cocaine. Akins testified at the hearing on the motion to suppress. He indicated he got a good look at the suspect because it was still daylight when the purchase took place. He also stated he had seen Martin in bars in the area after the May 23 sale. Akins was asked by the prosecutor at the hearing if he would identify defendant Martin in court. Martin was among a number of males sitting in the jury box. Akins got up from the witness chair, walked to the jury box, and tapped Martin on the shoulder. Akins, however, had been holding the color photograph of Martin on his lap immediately before standing and making the identification.
Defense counsel asked how Akins proceeded to have Martin arrested since he did not know his name even at the time of the motion to suppress. Akins testified the name Brian Martin was obtained from a photograph given him by Detective Dale Roussel of the St. James Parish Sheriff's Office. He indicated the photograph of Martin was the only photograph given to him. He also testified no other photographs were given to him by anyone, only the small color photograph of defendant. He had thus not identified Martin from a physical line-up or from a photographic array. That Akins had seen only one photograph was corroborated by the state's answers in discovery, which indicated only one photograph was viewed. Akins also made clear the fact he was unaware of the defendant's real name, but worked at all times on the assumption that the defendant's real name was Bryant Morris.
Akins was also questioned about the discrepancies between his description of the suspect in the police report and the actual attributes of defendant Martin. Martin is 6'4" tall, has a medium to dark complexion, weighed 180-185 pounds at the time of the transaction, and was 29 years old on the date of the sale. Akins admitted to the court he couldn't account for the discrepancy between his description of the suspect and Martin's attributes. He also testified he was shown the photograph of Martin a month after the incident during which time he made between 10 and 50 other undercover drug purchases. Akins acknowledged there were no witnesses who observed the transaction and no physical evidence other than the cocaine itself.
The trial court denied the motion to suppress the identification. It indicated that while Akins "may not be too good on descriptions and estimates of ages[,]" the court believed "the argument actually goes to the weight" of the evidence. Trial transcript, vol. III, pp. 533-34.
*594 The case then proceeded to trial before a jury. The state's case was premised upon the eyewitness testimony of Detective Akins. Akins once again made an in-court identification of defendant Martin as the person who sold him the cocaine. Akins's trial testimony, however, contradicted his previous testimony in numerous respects. Akins testified he had been shown two photographs. The first photograph was of one Bryant Morris, who was not the person who sold him the cocaine. He testified he, not a detective from St. James Parish, went out on the street and discovered the real name of the person who had sold him the cocaine. Although it took about a month, Akins obtained the name Brian Martin and gave the name to Detective Roussel. She gave him a picture for his review. He indicated there was no name on the photograph, but he identified it as being the suspect who had sold him the cocaine. The photograph was of defendant Brian Martin.
Akins attempted to explain the discrepancies in his prior testimony by first observing he did not remember making the prior statements under oath at the suppression hearing. He then indicated his answers had always been the same and counsel must have asked the question in another manner. When the transcript was read and it was noted he had previously testified he got the defendant's name from the picture, Akins stated "[t]hat can't be true." The record also reveals defendant Martin has a beard and small mustache. Akins did not recall whether he noticed facial hair on the person who sold him the cocaine. Also, defendant had a tatoo on his left arm, and at the time of the sale the suspect was not wearing a shirt. Akins also explained he had previously stated he saw only one photograph because he understood counsel to be asking about one specific day. He had, however, been asked repeatedly if he had seen any other photograph at any other time.[1]
Detective Akins's credibility was thoroughly reviewed by both the prosecution and the defense during trial. The state introduced the officer's entire record, including his years of service with the Jefferson Parish Sheriff's Department.[2] The record includes many letters of commendation. It also includes a series of steadily declining evaluations, several suspensions, and his ultimate termination from the department. The suspensions and the termination came about as a result of his repeatedly being caught by his supervisors trying to lie his way out of compromising situations.
The defense consisted of three witnesses: Officer Larry Albert, Detective Willie Taylor, and defendant Martin. Albert testified he knew a Bryant Morris who lives on Labray Street (the location of the May 23 sale) who matches the description given by Akins in his report. Taylor testified he also knew a Bryant Morris who lives in Lutcher and matches the description given by Akins, although he guessed Morris was older than 17-20 years old. Martin testified he is aware of a Bryant Morris who lives on Labray Street and he matches the description given by Akins. He denied selling drugs to anyone.
The jury, by a vote of 11-1, found Martin guilty as charged. Martin was subsequently sentenced by the court to a prison term of seven years at hard labor.

II.
Martin appealed, arguing the photo identification was suggestive, it tainted Akins's in-court identification, and both should have been suppressed, particularly after he showed Akins had been suspended for untruthfulness and misconduct and ultimately fired for his handling of an undercover drug operation. He also contended no rational jury could have found his identity as the perpetrator proven beyond a reasonable *595 doubt after Akins's credibility was shredded and after the deputies testified for the defense that they knew Bryant Morris who matched the description given by Akins, and who lived on the street where the sale was made. He also contended the sentence imposed was excessive for a first offender and the trial court abused its discretion in not suspending part of it.
The Court of Appeal, in an unpublished opinion, affirmed the conviction and sentence. State v. Martin, 578 So.2d 579 (La. App. 5th Cir.1991). It did not discuss Akins's background or reputation for truthfulness, it did not decide whether the photo identification was suggestive, and it made no mention of the testimony of the police officers who testified for the defense. It also made no mention of the fact Akins had changed his testimony. We granted a writ of certiorari to review the conviction and sentence. State v. Martin, 589 So.2d 484 (La.1991).

III.
Martin first argues the photographic display of one photograph was inherently suggestive and tainted Akins's later in-court identification. The court of appeal, without deciding whether the photograph was impermissibly suggestive, concluded Akins's own investigation of the defendant formed the necessary "independent basis" for holding the in-court identification proper.
The Supreme Court of the United States has noted that single photograph identifications should be viewed in general with suspicion. Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970-71, 19 L.Ed.2d 1247 (1968). The Court held, in Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pre-trial identification, an in-court identification may be permissible if there does not exist a "very substantial likelihood of irreparable misidentification." Id. (quoting Simmons, supra, at 384, 88 S.Ct. at 971).
Assuming a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. These factors were initially set out in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Id. 432 U.S. at 114, 97 S.Ct. at 2253. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Id.; see also State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Winn, 412 So.2d 1337 (La.1982).
We conclude, initially, that the procedure employed in this case was both suggestive, because only one photograph was used, and unnecessary, because there was no emergency or exigent circumstance involved. See Brathwaite, supra, 432 U.S. at 109, 97 S.Ct. at 2250. No explanation was offered as to why defendant could not have appeared in a line-up or why his picture could not have been shown to Akins along with those of a number of males of similar appearance. That a month had transpired between the time of the sale and the viewing of the photograph is a clear indication no emergency existed at the time of the viewing of the single photograph.
Having determined the single-photograph identification was both suggestive and unnecessary, we turn to the Biggers factors to determine whether Akins's ability to make an accurate identification outweighs the corrupting effect of the challenged identification procedure.
1. The opportunity of the witness to view the criminal at the time of the crime. Akins would appear to have had ample opportunity to view the suspect at the time of the sale. The suspect first flagged Akins's vehicle down and then entered *596 it to complete the transaction. At 6:35 p.m. on May 23, it was still daylight. The sketchy description given in the initial police report belies the supposition Akins got a good look at the suspect. Akins also testified at the trial that he could not stare at the suspect because he did not want to arouse any suspicions.
2. The witness's degree of attention. This is a difficult factor to evaluate on the record before us. Akins indicated he was certain he paid a good deal of attention to the suspect. He did not, however, recall that the suspect had facial hair; had a medium to dark complexion; had a tatoo on his left arm, the arm closest to Akins; and that Martin is significantly taller, heavier, and older than the suspect Akins described.
3. The accuracy of his prior description of the criminal. As previously indicated, Akins's report, compiled contemporaneously with the cocaine purchase, was incorrect on every attribute except for race and gender.
4. The level of certainty demonstrated at the confrontation. Akins indicated he was absolutely certain of both the photographic identification and his in-court identification. He never wavered from this position.
5. The time between the crime and the confrontation. Approximately one month elapsed between the time Akins made contact with the suspect and the time he identified the defendant. In Brathwaite, the Court found it telling that the officer viewed the picture after only two days, not "weeks or months" later. Id. at 116, 97 S.Ct. at 2254. Thus, a substantial amount of time passed between the meeting and the identification. Akins admitted that during this time he may have made between 10 and 50 additional undercover drug purchases.
In addition to the listed factors, the Brathwaite Court dealt with whether the officer was under "pressure ... to acquiesce in the suggestion that such a [single-photograph] display entails." Id. at 116, 97 S.Ct. at 2254. The Court placed a good deal of weight on the fact that the officer making the identification "could view the photograph at his leisure" and noted because he "examined the photograph alone, there was no coercive pressure to make an identification arising from the presence of another." Id. Rather, "[t]he identification was made in circumstances allowing care and reflection." Id.
In this case, it would appear Akins was under some pressure to accept the suggestion the pictured suspect was the person from whom he purchased the cocaine. He testified he viewed the photograph at the request of Detective Roussel in her presence, not at his leisure, as in Brathwaite. In addition, Akins's personnel records indicate one of his major difficulties with the Jefferson Parish Sheriff's Office was his inability to make big cases. With this history, and Roussel present, the pressure on Akins to identify the suspect from the photograph was significantly greater than that presented in Brathwaite.
In short, we find the indicators of Akins's ability to make an accurate identification are significantly outweighed by the corrupting effect of the single-photograph identification. Under the totality of the circumstances, therefore, we find there was a very substantial likelihood of misidentification.
We have previously held that when reviewing a trial court's ruling on a motion to suppress, we will consider the entire record, including the testimony presented at trial. E.g., State v. Seward, 509 So.2d 413 (La.1987); State v. Phillips, 444 So.2d 1196 (La.1984); State v. Smith, 332 So.2d 773 (La.1976). We have considered Akins's testimony at the suppression hearing and his subsequent trial testimony, the latter completely at odds with the former. There appears no logical or rational explanation for Akins's change in testimony. When given an opportunity to explain some of the discrepancies, Akins did so by misrepresenting his prior testimony.
We are mindful that "reliability is the linchpin in determining the admissibility of identification testimony...." Brathwaite, supra, 432 U.S. at 114, 97 S.Ct. at 2253. We are compelled to conclude under the totality of the circumstances the single-photograph *597 identification was inherently unreliable. We conclude the circumstances of the initial identification, plus Akins's identification of Martin at the suppression hearing, which immediately followed his having looked at the same photograph, tainted both the suppression hearing identification and the subsequent trial identification. There was no sufficient independent basis to admit the tainted identification testimony at trial. The court of appeal erred in affirming the district court's denial of the suppression motion. Both the in-court and out-of-court identifications of defendant should have been suppressed.

IV.
Martin next contends insufficient evidence supported the jury's verdict, i.e., the state failed to prove beyond a reasonable doubt that he was the person who sold cocaine to Akins. Martin relies on the many discrepancies in Akins's testimony and the fact that two St. James Parish deputies testified Bryant Morris matches the description given by Akins just after the drug purchase.
The court of appeal, without discussing the evidence attacking the credibility of the state's only witness, found the conviction turned on the issue of credibility and concluded a rational trier of fact could have found beyond a reasonable doubt the defendant was correctly and properly identified.
In reviewing the sufficiency of the evidence to support a conviction, we are guided by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact each element of the crime had been proven beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Captville, 448 So.2d 676 (La.1984).
The statute Martin is charged with violating provides "it shall be unlawful for any person knowingly or intentionally: [t]o... distribute ... a controlled dangerous substance classified in Schedule II...." La.Rev.Stat. § 40:967(A)(1). Hence, the state was required to prove defendant Martin, while having the specific intent to do so, distributed a Schedule II controlled dangerous substance, in this case cocaine. It is undisputed that a willing sale of a substance that was revealed to contain cocaine was made to Detective Akins on May 23, 1989. What is disputed, of course, is the identity of the seller.
We have concluded, supra, that both the out-of-court and the in-court identification of Martin by Akins are irreparably tainted and should have been suppressed. Without this evidence, we would be inclined to agree with Martin the evidence presented by the state is insufficient to support a conviction. Had the identification evidence not been presented at all to the jury in this case, we would reverse the conviction and render a judgment of acquittal. A reversal on the sole ground the evidence is insufficient to sustain the jury's verdict implicates the double jeopardy clause of the Fifth Amendment, made applicable to the states through the due process clause of the Fourteenth, see Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and bars a retrial on the same charge. Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).
It is quite clear, however, "that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause...." Lockhart v. Nelson, 488 U.S. 33, 41, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988) (emphasis added); see also United States v. Simpson, 910 F.2d 154, 159 (4th Cir.1990); United States v. Quinn, 901 F.2d 522, 529-32 (6th Cir.1990); People v. Mattson, 50 Cal.3d 826, 268 Cal.Rptr. 802, 789 P.2d 983, 1001 n. 16, cert. denied, ___ U.S. ___, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990); Thomas v. United States, 557 A.2d 599, 600-01 (D.C.App.1989) (en banc). As recognized in Burks, supra, the general rule is the double jeopardy clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the *598 trial proceedings. See Lockhart, supra, 488 U.S. at 39, 109 S.Ct. at 290. The basis for the Burks exception to this general rule is a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. A trial court, when passing on such a motion, considers all of the evidence it has admitted, and, to make the analogy complete, it must be the same quantum of evidence which is considered by the reviewing court. Lockhart, supra, at 41-42, 109 S.Ct. at 291.
When considering all the evidence presented to the jury in this case, we cannot say that when viewed in the light most favorable to the prosecution, the evidence was insufficient to convince a rational factfinder each element of the crime had been proven beyond a reasonable doubt. On the contrary, while we have concluded the trial court erred in admitting the identification testimony, and without it there was insufficient evidence to support a judgment of conviction, clearly with the inclusion of that evidence the total evidence was sufficient. The jurors here were free to make the credibility assessment which it is within their exclusive province to make. Rational jurors would not necessarily have had a reasonable doubt based upon the eyewitness testimony of Akins. We will not substitute our judgment of what the verdict should be for that of the jury. Considering all the evidence, including the evidence we today have ruled inadmissible, a rational juror could have believed defendant was the person who had the specific intent to distribute, and in fact did distribute, cocaine to Detective Akins.
Hence, since the reversal of this conviction is for trial error, we are constrained to remand the case to the trial court for a new trial. See State v. Murphy, 542 So.2d 1373, 1377 (La.1989). The state must then act in good faith to determine whether it can produce sufficient evidence absent the tainted identification testimony.
Given our resolution of this case, we deem it unnecessary to address defendant's remaining arguments.

V.
For the foregoing reasons, the judgment of the court of appeal is reversed, the defendant's conviction is reversed, the sentence is vacated, and the case is remanded to the trial court for a new trial.
REVERSED AND REMANDED.
MARCUS, J., concurs and assigns reasons.
LEMMON, J., concurs and will assign reasons.
MARCUS, Justice (concurring).
I concur in the majority's conclusion that the pre-trial photographic identification was made under circumstances which tainted the subsequent in-court identification. However, in the absence of such unusual circumstances, I believe the quality of an eyewitness identification should be a question of fact to be determined at trial by the jury.
NOTES
[1] After trial, the defense issued a subpoena duces tecum for all pictures used in the investigation of the case. At the post-verdict motions hearing, the state produced only one photograph, a copy of the one used at trial depicting the defendant. The state did not produce the photograph of Bryant Morris allegedly viewed by Akins shortly after the crime.
[2] Akins had been employed by Jefferson Parish prior to his taking a position as a detective with St. Charles Parish.