liWICKER, JUDGE.
Erin Neoland was charged by grand jury indictment with three counts of Distribution of Cocaine, in violation of La.R.S. 40:967A(1). The minutes of the trial indicate that Neo-land was also charged by bill of information with Possession of Cocaine with the Intent to Distribute, a violation of La.R.S. 40:967 A. The appellate record does not contain a copy of this bill of information. Although the minutes do not reflect a joinder of the offenses for trial, the trial transcript indicates that a jury trial was conducted jointly on the three counts of Distribution of Cocaine and on the charge of Possession of Cocaine with the Intent to Distribute. After the state rested its case, the defendant orally moved for a “Directed Verdict of Acquittal”[1] in the *125 charge for Possession of Cocaine with the Intent to Distribute and on Count One of the Distribution of Cocaine charge. The trial court granted these motions. The jury, by a vote of 10-2, found the defendant guilty as charged on the two remaining counts. Several months later, the defendant was sentenced to 12 years at hard labor on each count, to be served concurrently and with credit for time served. The trial court assigned written reasons for the sentences.
Over a year later, the defendant filed an application for post-conviction relief requesting an out-of-time appeal. After a hearing, the trial court denied the defendant’s request. Thereafter, the defendant appealed and this court, treating that appeal of the denial of the application for post-conviction relief as a writ application, granted relief. The matter was remanded to the district court which was ordered to grant the defendant an out-of-time appeal. State v. Neoland, 93-KA-637 (decided January 10,1994.). In this appeal, the defendant argues that there was insufficient evidence of identification of the defendant as perpetrator of the offense and requests a review for errors patent. We affirm but remand with instructions.
Agent Vanessa Bobb of the Lafayette City Police Department testified as follows. On September 14, 1989, she was working as an undercover narcotics officer with the St. James |2Parish Sheriffs office. She drove to Lutcher and parked on Main Street. There she saw several black males standing on a corner. After motioning for one of the men to come to her car, a man who identified himself as “Snook” approached the driver’s side. Bobb identified the defendant as .“Snook”. She stated she was sure the defendant was the same individual who came to her car that night; she remembered his face.
She further testified that Neoland, i.e., “Snook”, then asked her “what she needed.” The officer responded that she was looking for a “rock,” meaning crack cocaine. “Snook” said he believed that he could get her some powdered cocaine. He walked back to the group of men, had a short conversation and returned. He handed the officer a small bag of white powder in exchange for $25.00. Then, “Snook” stated that he probably could find her a rock but that he would have to take her to the location. She allowed him to get in the front passenger seat and followed his directions. They stopped at two locations, but the defendant was unable to complete the drug transaction. At a third house, the defendant went inside and returned with a piece of crack for $28.00.
The next day, on September 15, 1989, Officer Bobb was working with another undercover agent in the same area. While driving-in Lutcher, Officer Bobb recognized the same man who had sold her cocaine the previous day. “Snook” flagged the officers down and entered the back seat of the vehicle. Officer Bobb requested crack; the defendant gave her directions to a certain location. After stopping, the defendant exited the vehicle. He returned with a piece of crack which he gave the officer in exchange for cash. The defendant reentered the vehicle and the officers dropped him off in the housing project.
■After the purchases, Officer Bobb met with Officer Roussel and. gave him the contraband. Based on the physical description and nickname of the drug seller, Agent Bobb was told the suspect’s name was Erin Neoland. Subsequent lab analysis proved the substances were cocaine.
Officer Bobb did not identify the defendant in a lineup prior to trial. After the drug transactions, the officer did not see the defendant until the trial in April of 1991, nineteen months after the offenses. Prior to her testimony, Officer Bobb looked into the courtroom and saw the defendant. She told other officers that the defendant was the same man who sold her the narcotics.
_JjAt the trial, Officer Bobb positively identified the defendant in court as the drug seller. She testified that she had an opportunity to observe and see the defendant. Bobb stated that when she first saw the *126 defendant, the area was fairly lit. There was only about two feet between the two of them and he was in her vehicle about 15-20 minutes. Also, the car’s interior light came on when the defendant entered and exited the vehicle. She further testified that she had no doubt about the in-court identification.
Detective Cureau of the St. James Parish Sheriffs Office, testified that he had grown up with the defendant and knew that his nickname was “Snook”. On cross-examination, he stated that he knew an older man, who worked at area barrooms, who had the same nickname. He further admitted that it was possible that another man named “Snook” was in the area.
Detective Dale Roussel testified that he obtained the name of the defendant after he relayed the description and nickname of the suspect to Detective Cureau. He acknowledged that during the trial, Officer Bobb looked into the courtroom and stated that the defendant was the man who sold her the drugs.
Appellate counsel requests that the Court examine the record for errors patent. The only patent error we have noticed is that the sentencing court failed to inform the defendant of the prescriptive period for post-conviction relief as is mandated by La. C.Cr.P. art. 930.8 C. In addressing this type of error patent, our court has remanded the matter to the trial court and ordered it to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of the opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Boyd, 94-641 (La.App. 5th Cir. 12/28/94), 649 So.2d 80, and State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.
The defendant also assigns as error, “The verdict is contrary to the law and evidence in that the possibility of misidentification by agent Bobb is significantly high as to not eliminate the possibility of reasonable doubt.”
In this assignment of error, the defendant argues there was insufficient evidence to support his conviction. Specifically, he contends that the identification of the defendant as the man who sold her cocaine was uncertain and tainted. He argues that he was prosecuted because his nickname was “Snook”, the same name of the suspect who sold drugs to the undercover agent. |4A1so, he contends that because there had been “a gap of about four years” between the alleged drug sales and the trial, the undercover agent’s in-court identification of him was prejudicial.[2]
In assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crimes charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). Also, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364, 365 (La.1982).
The primary issue is whether the identification of the defendant as the person who sold the cocaine was proven beyond a reasonable doubt. Herein, the sufficiency issue basically involves an issue of reliability of the identification. When a suspect is the only one presented for identification, this renders the identification procedure subject to further inquiry. However, if the identification is otherwise reliable, the evidence is admissible. State v. Walker, 576 So.2d 1202 (La. App. 5th Cir.1991).
In State v. Martin, 595 So.2d 592 (La.1992), the procedure employed was both suggestive, because only one photograph was used, and unnecessary, because there was no emergency nor exigent circumstance involved. The viewing of a single photograph by an undercover sheriffs deputy one month after the drug transaction was found to be suggestive; further, the Louisiana Supreme Court found that the single photo identifica *127 tion was unreliable, that the indicators of the deputy’s ability to make an accurate identification were significantly outweighed by the corrupting effect of the single-photograph identification and that there was a very substantial likelihood of misidentification. In Martin, the undercover officer was under pressure to accept the suggestion that the pictured suspect was the person who sold the cocaine. Also, the undercover officer’s inability to “make big cases” as an agent with another parish sheriffs office combined with the presence of Detective Dale Roussel at the identification placed the undercover agent under greater pressure to identify the suspect.
|5In the instant case, the state presented testimony of Officer Vanessa Bobb, a Lafayette City Police Department officer assigned to work in St. James Parish, who conducted the undercover drug transactions. Officer Bobb positively identified the defendant in court as the man who sold her the cocaine. The defendant did not present any witnesses or evidence during the trial. Defense counsel only cross-examined the state’s witnesses, primarily about the identification of the defendant. Obviously, the jury chose to believe the officer’s identification that the defendant sold her the cocaine. However, unlike Martin, there is no evidence in the record that the officer was under pressure to “make cases” or that Detective Roussel’s presence added pressure.
Nevertheless, no explanation was given as to why Officer Bobb was not shown, prior to trial, an out-of-court lineup including the defendant or a photographic lineup with containing the defendant’s picture. Nor was the officer who worked with Officer Bobb on September 15 called to testify at trial; no explanation was given for this omission. Because Officer Bobb viewed the defendant while she was looking into the courtroom prior to her in-court identification and there was no pre-trial lineup, the in-court identification of the defendant was suggestive.
When there is a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. These factors, set out in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathivaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the time of the confrontation; and (5) the time between the crime and the confrontation. State v. Martin, 595 So.2d at 595.
Considering the Biggers factors in determining whether Officer Bobb’s ability to make an accurate identification outweighs the corrupting effect of the challenged identification procedure we conclude the suggestive identification does not present a substantial likelihood of misidentification.
The officer had an opportunity to view and speak with the defendant. There was adequate lighting. The defendant was only a few feet away from the officer during the offenses. The record does not indicate the type of attention that the officer paid to the suspect. However, Rafter the drug transactions the officer completed a police report containing a description of the suspect. There is no indication in the record whether the suspect’s description differed from the defendant’s physical description.
As previously stated there is no indication of whether Officer Bobb’s initial description was accurate. Detectives Roussel and.Cu-reau were not asked and did not state the description of the suspect that was given to them after the offenses.
Officer Bobb’s level of certainty was strong. She indicated that she had no doubt about her in-eourt identification and recognized the defendant by his face. She did not waver from this position.
A substantial amount of time passed between the drug sales and the officer’s identification of the defendant. Although this period was not four years as argued by the defendant, there were nineteen months between the time of the offenses and the trial when the identification occurred. There is no indication of the number of additional *128 undercover transactions the officer made during this time; however, the record does indicate that the officer ended this assignment a day after the last sale from the suspect. Although there was a significant time lapse between the drug transactions and the trial, considering the other factors, this court concludes that the lengthy period does not destroy the reliability of the identification. Officer Bobb had no doubt about her identification. Moreover, herein, unlike in State v. Martin, supra, the record does not reveal factors which increased the pressure for Officer Bobb to identify the suspect. Therefore, these circumstances surrounding the identification do not suggest a substantial likelihood of misidentification.
Thus, viewed in the light most favorable to the prosecution, the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant was the man who sold cocaine to the undercover agent.
Accordingly, the defendant’s conviction and sentence are affirmed, but the matter is remanded to the district court, which hereby is ordered to send written notice to the defendant of the provisions of La.Code Crim.P. art. 930.8 within ten days of the rendition of this opinion and to file in the record of these proceedings written proof that the defendant received the notice.
CONVICTION AND SENTENCE AFFIRMED, CASE REMANDED WITH ORDER.

. A directed verdict is inappropriate in criminal cases; its criminal counterpart, a motion for acquittal, is not authorized in jury trials. La. C.Cr.P. art. 778 provides, “In a trial by the judge alone the court shall enter a judgment of acquittal ... after the close of the state's evidence or all of the evidence, if the evidence is insufficient to sustain a conviction.” (Emphasis added). See *125 State v. Brooks, 452 So.2d 149 n. 2 (La.1984). However, during the trial, the state indicated that it did not contest the motions.

. The record does not reflect that the defendant filed a motion to suppress. Because there was no pre-trial identification to suppress, no motion was necessary.