NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-58

STATE OF LOUISIANA

VERSUS

JONATHAN L. CITIZEN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 75,174
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Chief Judge Ulysses Gene Thibodeaux, J. David Painter, and Shannon J. Gremillion, Judges.

AFFIRMED.

Edward J. Marquet
Louisiana Appellate Project
P.O. Box 53733
Lafayette, LA  70505-3733
(337)237-6841
COUNSEL FOR DEFENDANT/APPELLANT:
     Jonathan L. Citizen

Frederick L. Welter, Assistant District Attorney
Fifteenth Judicial District, Acadia Parish
P.O. Box 288
Crowley, LA  70527-0288
(337)788-8831
COUNSEL FOR APELLEE:
     State of Louisiana

**PAINTER, Judge.**

Defendant, Jonathan L. Citizen, appeals his conviction for distribution of cocaine, a violation of La.R.S. 40:967(A). Finding no merit in any of his assignments of error, we affirm his conviction.

## FACTS AND PROCEDURAL HISTORY

On November 20, 2008, undercover narcotics officer 166, Jessica Laborde, was working in Church Point, making controlled narcotics purchases. She worked with a confidential informant for identification purposes only. Officer Laborde was fitted with an audio device monitored by Lieutenant Kevin Trahan, Chief of Narcotics for the Acadia Parish Sheriff's Office, and Sergeant Jackie Boddye.

Around 6:10 p.m., Lieutenant Trahan heard Officer Laborde make contact with a male subject and purchase narcotics. The transaction was monitored but was neither recorded nor transcribed. Officer Laborde met the subject in the parking lot of the Oasis Club. She advised Lieutenant Trahan that she had purchased "three pieces of crack cocaine from Big Jonathan." Officer Laborde and Lieutenant Trahan then met at a secure location where she turned over the drugs to Lieutenant Trahan.

Lieutenant Trahan requested a photo lineup from the Louisiana State Police and received black and white photocopies. He submitted a photo lineup to Officer Laborde in his usual way, showing her six pictures and asking her if she can point out the person from whom she bought the narcotics. Officer Laborde identified the photograph of Defendant on March 20, 2009, some four months after the purchase.

To keep the undercover agents from being identified by the drug dealers, Lieutenant Trahan normally waits four to six months after a drug buy to arrest a suspect. During that time, he uses the undercover agents at different areas without drug dealers knowing who they are.

Officer Laborde testified that she worked in the Church Point area purchasing narcotics in undercover buys. She and her confidential informant met Lieutenant

Trahan at a secure location in clear weather around dusk on November 20, 2008. They traveled to the Oasis Club, with Officer Laborde driving, to purchase the drugs. She saw someone at the Oasis when she arrived and told him, "I want $60 worth of hard," meaning crack cocaine. The man gave her three rocks of cocaine, and she gave him $60. The hand-to-hand exchange took less than a minute. Officer Laborde left the area, put the drugs in an evidence envelope, and gave them to Detective Trahan at the secure location. Officer Laborde was trained as an undercover agent "to identify [suspects] so [she] remember[s] facial features, the face, the shape of the face, the hair, the eyes, nose, the body size, the skin complexion." She identified Defendant as the suspect who sold her the drugs that evening.

Officer Laborde did not know Defendant prior to the transaction. She was "very sure that it's him" when she chose his photograph from the lineup, and she was also certain of his identity at trial. Under cross-examination, Officer Laborde admitted that the confidential informant was not mentioned in the report and that she had previously omitted the detail of reviewing the report prior to viewing the lineup when she spoke to defense counsel. The informant was provided to Officer Laborde by Lieutenant Trahan.

Although Officer Laborde was trained to notice details, she did not recall what the suspect wore, how much money she was given to buy the drugs, or how many transactions she made that day. She also admitted that she had made three or four mistakes in identification before because "[t]he evidence and the description given by the victim was wrong." She did not recall making an identification mistake in a narcotics case. Officer Laborde confirmed that she and the confidential informant "would be burnt and [they] wouldn't be able to make anymore [sic] buys" if an arrest were made immediately after an undercover drug purchase. She confirmed the average time for making a narcotics purchase was "[a] minute or less."

2

Laurette Rapp, forensic chemist at the Acadiana Crime Lab, testified as an expert in forensic chemistry, controlled dangerous substances, and analysis of controlled dangerous substances. She performed a number of tests, which she described at trial, that all confirmed that the substance purchased by Officer Laborde was crack cocaine. She performed the tests on material in a bag numbered N08-263 by the Acadia Parish Sheriff's Office, the same number placed on the bag containing the substance purchased by Officer Laborde.

Defendant filed a motion for disclosure of the confidential informant's identity, which was denied in a hearing immediately prior to the onset of trial. Defendant also filed a motion to suppress evidence of the photo lineup, which was denied following a hearing. Following a trial by jury, Defendant was convicted of distribution of cocaine, a violation of La.R.S. 40:967(A). Defendant was adjudicated a multiple offender and was sentenced to life in prison without benefit of probation, parole, or suspension of sentence pursuant to La.R.S. 15:529.1.

On appeal, Defendant argues that he was entitled to know the identity of the confidential informant, that the trial court erred in denying his motion to suppress the photo lineup identification, and that the evidence was insufficient to sustain his conviction. For the following reasons, we affirm Defendant's conviction.

Defendant also appealed his adjudication as a multiple offender under this court's docket number 12-59. The two matters were consolidated for briefing purposes only. Our affirmation of Defendant's adjudication as a multiple offender is set forth in *State v. Citizen*, 12-59 (La.App. 3 Cir. ___/___/12), ___ So.3d ___.

**DISCUSSION**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent in this case.

3

Defendant claims that the evidence at trial was insufficient to find him guilty beyond a reasonable doubt. We consider this assignment of error first in accordance with *State v. Hearold*, 603 So.2d 731 (La.1992).

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow this court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). Our function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

It is the role of the factfinder to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than ensuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court

must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. ___, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

Defendant was convicted of distribution of a Schedule II substance, cocaine, a violation of La.R.S. 40:967(A). "'Distribute' means to deliver a controlled dangerous substance . . . by physical delivery. . . ." La.R.S. 40:961(14). The evidence showed that Officer Laborde purchased a substance from a suspect. The purchase was monitored by Lieutenant Trahan and Sergeant Boddye. Officer Laborde identified the suspect as Defendant from a photographic lineup and at trial. The substance was identified by an expert at trial as crack cocaine. We find that the evidence sufficiently showed that Defendant physically delivered cocaine to Officer Laborde. Therefore, this assignment of error lacks merit.

*Identity of the Confidential Informant*

Defendant contends that the trial court erred by denying his request to learn the identity of the confidential informant. He argues that the "informant participated in the drug transaction by calling out to the suspect and beckoning the suspect to approach the vehicle occupied by the confidential informant and the undercover narcotics agent." Officer Laborde testified at the hearing on the motion to suppress the photo lineup that the confidential informant "called [the suspect] over to the vehicle so that would be it."

A defendant bears the burden of proving exceptional circumstances when seeking to reveal a confidential informant's identity. *State v. Coleman*, 97-2802 (La. 4/24/98), 713 So.2d 440. Courts should "consider the 'particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Id.* at 441 (quoting *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628 (1957); citing *State v. James*, 396 So.2d 1281 (La.1981)).

In *Coleman*, a confidential informant provided information about the defendant's activities and went with an undercover agent who made a controlled buy of cocaine. Agents testified at trial that the confidential informant accompanied them "'to help identify' the defendant and to 'show the area' while the supervising officers positioned themselves out of sight." *Coleman*, 713 So.2d at 441. The agents actually made the exchange of money for drugs with the defendant; thus, the informant "did not participate directly in the transaction." *Id.* The informant, however, was not the only witness to the purchase; another agent was also present, and he corroborated testimony related to the identity of the seller and the circumstances of the transaction. The court held that the "'mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required' for disclosure of a confidential informant's identity." *Id.* at 442 (quoting *United States v. Jiles*, 658 F.2d 194, 197 (3 Cir. 1981), *cert. denied*, 455 U.S. 923, 102 S.Ct. 1282 (1982) and *State v. James*, 396 So.2d 1281 (La.1981)).

> The State's privilege to withhold the identity of a confidential informant is:
>
> founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging persons to supply information to the police without fear of reprisal by the person to whom the information pertains. Thus, the identity of an informer should be made known to the accused only when a defendant's right to prepare his defense outweighs the need for protection of the flow of information.

6

*James*, 396 So.2d at 1284 (citing *Roviaro,* 77 S.Ct. 623). In *James*, although the defendant claimed on appeal that the trial court erred by not ordering the State to reveal the informant's identity, the defendant identified the informant at trial and admitted that he had known the informant for seven years. Thus, he failed to show any prejudice from the court's failure to order the identification.

In *State v. Davis*, 411 So.2d 434 (La.1982), the confidential informant accompanied an undercover agent on four separate drug purchases. During the first purchase, the informant pointed out the defendant to the agent and introduced them but had no further participation in any of the purchases. The Louisiana Supreme Court, citing *Roviaro*, 77 S.Ct. 623, held that "the defendant failed to bear the burden of demonstrating exceptional circumstances pertaining to his defense which would gain the disclosure of the identity of the confidential informant." *Davis*, 411 So.2d at 437. Citing *James*, 396 So.2d 1281, the court noted the trial court's "great discretion in making the determination of whether or not to disclose the identity of a confidential informant." *Davis*, 411 So.2d at 437.

Defendant cites *State v. Fontenot*, 524 So.2d 867 (La.App. 3 Cir. 1988) in support of his effort to learn the informant's identity. *Fontenot*, however, involved an informant who not only introduced the agent to the defendant at a bar but also spoke briefly with the defendant outside the agent's presence. When the informant returned to the agent's table, she told him that the defendant would try to get him a bag of marijuana. This court found that the informant "was not merely a bystander, or onlooker, and her participation was more than merely furnishing a tip that enabled the police to make an arrest." *Id.* at 869. Rather, "[w]hen she was alone with the defendant at the bar, [she] helped arrange for a sale of marijuana to take place." *Id.*

In this case, the facts show that the confidential informant was a bystander who did no more than point out Defendant to Officer Laborde. He did not take part in the transaction. The public's interest in protecting the identity of the informant outweighs

Defendant's right to prepare his defense. La.Code Evid. 514. Further, we find that Defendant's "mere speculation" that the informant would help his case "'is not sufficient to show the specific need required' for disclosure of a confidential informant's identity." *Coleman*, 713 So.2d at 442. Thus, this assignment lacks merit.

*Suppression of Photo Identification Lineup*

Defendant contends that the trial court erred in failing to suppress the photo lineup identification by Officer Laborde.

> An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. *State v. Neslo,* 433 So.2d 73, 78 (La.1983); *State v. Robinson,* 386 So.2d 1374, 1377 (La.1980). Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. *State v. Smith,* 430 So.2d 31, 43 (La.1983); *State v. Guillot,* 353 So.2d 1005, 1008 (La.1977). The question for a reviewing court is to determine whether the procedure is so conducive to irreparable misidentification that due process was denied. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); *State v. Martin,* 595 So.2d 592, 595 (La.1992); *State v. Prudholm,* 446 So.2d 729, 738 (La.1984). A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. *State v. Prudholm,* 446 So.2d at 738; *State v. Chaney,* 423 So.2d 1092, 1098 (La.1982).

*State v. Bright*, 98-398, pp. 17-18 (La. 4/11/00), 776 So.2d 1134, 1145, *post-conviction relief granted*, 02-2793, 03-2796 (La. 5/25/04), 875 So.2d 37.

Defendant's motion to suppress alleged that the identification procedures "that were necessarily and impermissibly suggestive and that were so conductive, under the totality of the circumstances, to irreparable mistaken identification." At the hearing of the motion, the trial court found that the lineup was "not suggestive in any way relative to [Defendant]." The trial court also found that "under the circumstances there may be some issues as to the weight given; however, there is nothing unconstitutional about the lineup as presented."

The lineup displayed the black and white photographs of six African-American men who appear to be approximately the same age and build. Officer Laborde chose

8

photo number three as depicting the person who sold the cocaine to her. At the hearing of the motion, she testified that she did not recall it being hard to identify Defendant from the lineup. She "remembered what he looked like." Officer Laborde identified Defendant at trial and testified that she picked Defendant from the photo lineup without any trouble. We find that the trial court correctly determined that the lineup was not suggestive.

According to *Bright*, 776 So.2d 1134, both a suggestive lineup and the likelihood of misidentification are necessary in order to show the trial court erred in failing to suppress this evidence. Because the lineup was not suggestive, this assignment of error lacks merit.

## DECREE

For the foregoing reasons, Defendant's conviction is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.