JUSTICE ALBIN, concurring.
**595 I concur with the Court's per curiam judgment affirming defendant's conviction in light of the overwhelming evidence of his guilt. The failure to conduct a pretrial *1022 identification hearing and the prosecutor's erroneous statement in summation would not have changed the outcome of this case.
Unlike my colleagues, however, I would not elide the issue of whether a suggestive identification procedure should trigger a pretrial Wade hearing when a law enforcement officer is the eyewitness. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The issue is too important and the answer too obvious to await a resolution in the indefinite future. The showing of a single photograph is inherently suggestive, whether the witness is a layperson or a police officer. Even if we accept that police officers have enhanced observational skills, common sense and our jurisprudence tell us that exposing police officers to highly suggestive identification procedures inevitably will lead to more misidentifications and more wrongful convictions.
I am therefore prepared today to hold that, even in the case of police witnesses, whenever practicable, an identification procedure should be conducted by the showing of a photographic array rather than a single photograph. Highly suggestive identification procedures, such as the showing of a single photograph (a photographic "showup") ordinarily should result in a Wade hearing.
I.
A.
This Court has acknowledged that presenting an eyewitness with a single photograph is an "inherently suggestive" identification procedure. See State v. Henderson, 208 N.J. 208, 259-61, 27 A.3d 872 (2011) ; State v. Herrera, 187 N.J. 493, 504, 902 A.2d 177 (2006). When a police officer presents a witness with a single photograph of a suspect, he is "conveying the suggestion to the witness that the one presented is believed guilty." See **596 Wade, 388 U.S. at 234, 87 S.Ct. 1926. Even in a case involving an undercover police officer who was shown a single photograph to identify the dealer from whom he made a purchase, the United States Supreme Court stated that the suggestive procedure may have had a "corrupting effect." Manson v. Brathwaite, 432 U.S. 98, 99-100, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
After Manson, courts appear to routinely conduct pretrial hearings when police witnesses are exposed to highly suggestive procedures, such as the single photographic showup. See, e.g., United States v. Jones, 689 F.3d 12, 14-15 (1st Cir. 2012) (noting district court's finding that showing of single photograph to undercover law enforcement officer was "impermissibly suggestive"); United States v. Smith, 429 F.Supp.2d 440, 449-50 (D. Mass. 2006) (finding that use of "single-photo identification" in undercover agent's identification of arms dealer "was impermissibly suggestive"); State v. Martin, 595 So.2d 592, 595 (La. 1992) (concluding that single photograph identification by undercover detective "was both suggestive ... and unnecessary, because there was no emergency or exigent circumstance involved").
We do not need additional social science evidence to reach the obvious conclusion that the showing of a single photograph is as inherently suggestive to a police witness as it is to a lay eyewitness. Although police officers will be better prepared to remember an individual's features in certain circumstances, such as during undercover operations, there is no evidence that police officers as a class have enhanced or superhuman identification abilities. Their memory -- like all human memory -- will be subject to "vagaries" and "malleability." See Henderson, 208 N.J. at 241-48, 283, 27 A.3d 872. There is no reason to believe that the memory of a police officer, even one whose awareness is heightened during *1023 a criminal encounter, cannot be corrupted by a suggestive identification procedure.
B.
To obtain a pretrial Wade hearing, a defendant need only show "some evidence of suggestiveness" in the identification procedure **597 that could lead to a mistaken identification. Id. at 288-89, 27 A.3d 872 (emphasis added). Law enforcement officers control the "system variables" -- the variables related to the identification procedure -- and therefore they control the integrity of the identification process. See id. at 218, 27 A.3d 872.
In Henderson, we set forth a best practices model for a fair identification procedure. An officer conducting a photographic lineup should not know who the suspect is or where the suspect's photograph is located in the lineup. Id. at 248, 27 A.3d 872. That approach removes the possibility that the officer, who is administering the identification procedure, will suggest even unconsciously which photograph the witness should select. Id. at 248-49, 27 A.3d 872. The photographic array should consist of at least six photographs, including one of the suspect. Id. at 251-52, 27 A.3d 872. Additionally, the witness should be told that the suspect may or may not be in the lineup and not to feel compelled to make an identification. Id. at 250, 27 A.3d 872.
We have taken exquisite measures to ensure that law enforcement officers follow procedures that will enhance the fairness of eyewitness identifications. Surely, if those procedures will minimize the potential for misidentification by lay witnesses, they will have the same beneficent effect when applied to police witnesses.
To warrant a pretrial hearing, a defendant need only show that one of the procedural variables under law enforcement's control presented "some evidence of suggestiveness." Id. at 288, 27 A.3d 872. Law enforcement controls whether a witness is shown a single photograph or an array of six photographs. The State should bear the burden of presenting evidence that a photographic showup was necessary because the production of an array would have unreasonably delayed the identification process. At the hearing, as always, the court will assess the overall reliability of the identification, including in the case of a police officer, his or her training and/or heightened awareness for making an identification.
**598 II.
The unnecessary use of inherently suggestive identification procedures, even in the case of a trained undercover detective, as here, cannot be squared with the logic of Henderson. The system variables discussed in Henderson address the frailty of human memory, not just a layperson's memory, and Henderson lays out a framework for using non-suggestive identification procedures that will reduce the likelihood of misidentification. That framework should apply across the board because a miscarriage of justice occurs whether a misidentification comes from a lay witness or a police witness.
Certainly, there will be times when it is not practicable to prepare a photographic array for a police witness; on those occasions the circumstances may necessitate showing only a single photo. See id. at 261, 27 A.3d 872. Nothing in the record, however, indicates that the police were unable to generate a photographic array without undue delay to present to the undercover detective in this case. The showing of a single photograph to the detective -- defendant's photograph -- certainly signaled to the detective that her police colleagues had "confirmed" defendant as the drug seller.
In sum, the identification procedure used was sufficiently suggestive to warrant a pretrial hearing. The State should have *1024 been required to demonstrate the reliability of the identification despite the use of a single photograph.
Additionally, going forward, when an officer makes an identification from an inherently suggestive photographic showup, the State should explain why it was not feasible to use a photographic array. If its response is unsatisfactory, then the court should consider giving a charge that would allow the jury to draw an adverse inference from the State's use of an unnecessarily suggestive identification procedure. This will provide an inducement for the police to use non-suggestive identification techniques. The consistent use of reliable identification procedures, such as photographic **599 arrays, whenever practicable, is the best way to minimize the potential for misidentifications.
III.
For the reasons expressed, I believe the Court has passed up an important opportunity to apply the principles of Henderson to police witness identifications and thus ensure greater fairness in the criminal justice process.