807 So.2d 359 (2002)
STATE of Louisiana, Appellee,
v.
Frederick D. LEE, Appellant.
No. 35,333-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
*362 Paula C. Marx, Anita D. McKeithen, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler, William J. Edwards, Assistant District Attorneys, Counsel for Appellee.
Before GASKINS, CARAWAY and KOSTELKA, JJ.
CARAWAY, Judge.
Defendant was tried and convicted of armed robbery. La. R.S. 14:64. He was found to be a third felony offender and was sentenced to life imprisonment. La. R.S. 15:529.1. The defendant now appeals. The defendant's conviction and sentence are affirmed.

Facts
The armed robbery occurred in a parking lot of an apartment complex on November 23, 1998, at approximately 10:00 p.m. The victim, Patricia Martin, testified that she and her friend, Audrey Jackson, asked the defendant, Frederick Lee, for a ride to a convenience store. Although Martin and Jackson were both familiar with the defendant before this incident, they knew him only by his nickname, "Boom." During the conversation, Lee asked Martin if she had any money. Martin produced $30 from her bra and showed it to Lee. After Martin walked with Lee over to an automobile, Lee demanded that Martin give him the money. When Martin resisted, Lee pulled a gun and put it to Martin's head. Martin resisted again, and Lee struck her on her neck. Martin dropped the money. Lee took the money and then, with others, drove away from the parking lot. Jackson, who also knew the defendant as "Boom" before the robbery, corroborated Martin's description of the crime.

Discussion

Sufficiency of the Evidence
Lee first contests the sufficiency of the evidence. He disputes his identification at the crime scene. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writ denied, 00-3070 (La.10/26/01), 799 So.2d 1150.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge's or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La. *363 App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
In cases involving a defendant's claim that he was not the person who committed the crime, under Jackson v. Virginia, supra, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La. App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925.
Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. The trier of fact has great discretion in assessing the credibility of witnesses. State v. Ervin, 32,430 (La. App. 2d Cir.9/22/99), 747 So.2d 109, writ denied, 99-3201 (La.4/20/00), 760 So.2d 342. Absent internal contradictions or irreconcilable conflict with the physical evidence, the testimony of an eyewitness that he or she observed all of the elements of the offense, coupled with the identification of the defendant as the culprit, is generally sufficient to support a conviction. Id.
To convict the defendant of armed robbery, the state is required to prove that the defendant took something of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
The victim, Martin, and her friend, Jackson, both testified that "Boom" pulled out a gun and demanded Martin's money. Martin was later able to identify Boom as the defendant from a photo lineup provided by the police. Martin and Jackson testified that they were familiar with Boom before this incident and identified Lee as the person they knew as Boom. While Lee suggests that their identification may not be accurate because the robbery occurred at night, Martin testified that the parking lot where the robbery occurred was lighted. Moreover, Lee was close enough to Martin to hold a gun to her head and to strike her in the neck. Therefore, the state sustained its burden to negate the possibility of misidentification, and the evidence from the women's testimony established guilt beyond a reasonable doubt. Accordingly, this assignment is without merit.

Suppression of Photo Lineup
Lee filed a motion to suppress the testimony regarding the out-of-court identification by Martin and Jackson, arguing that his photo was grossly dissimilar to the others in the photo lineup and that other persons with the alias Boom were not included. The trial court denied the motion after a hearing.
When a defendant seeks to suppress an identification, he must show that the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. State v. Martin, 595 So.2d 592 (La.1992). The U.S. Supreme Court has indicated several factors appropriate for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. These factors include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the victim's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Neil v. *364 Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, supra.
A lineup is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing marks on the photographs may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (La.1992). Photographs used in a lineup are suggestive if they display the defendant so singularly that the witness's attention is unduly focused on the defendant. Id. It is not required that each person whose photograph is used in the lineup have the exact physical characteristics as the defendant. What is required is sufficient resemblance to reasonably test identification. State v. Davis, supra. Even if suggestiveness is proven by the defendant, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, supra.
After examining the six-picture photo display at issue, we note that the pictures are all the same size. Defendant's picture is on the top, and his head is smaller than those depicted in the other pictures. Lee is the only suspect wearing a patterned polo shirt. One other suspect is wearing a white polo shirt with a black collar, while another is wearing a dark colored sweatshirt. The other individuals appear to be wearing white T-shirts.
The officer who prepared the photo display used a computer to assist him in selecting pictures of black men with similar facial features. Before the victim viewed the array, the officer told her that the suspect may or may not be included and that hair styles and facial features may vary between the time the photo was taken and the time of the robbery. The officer handed a manila folder containing the display to Martin, asked her to open it, and did not suggest which picture she should select. The officer followed the same procedure with Jackson. Martin testified that she did not notice that the size of the defendant in the picture she selected differed from the other pictures. She further testified that she had no doubt when she chose the person pictured as the person who robbed her.
In State v. Johnson, 00-0680 (La.App. 1st Cir.12/22/00), 775 So.2d 670 and State v. Nasworthy, 542 So.2d 715 (La.App. 4th Cir.1989), the court found that a similar size disparity in a defendant's photo did not make the lineup unduly suggestive. In addition, there are several cases finding that differences in the defendant's clothing, such as in this case, are not unduly suggestive. State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987); State v. Gabriel, 542 So.2d 528 (La.App. 5th Cir.1989), writ denied, 558 So.2d 566 (La.1990).
Additionally, Lee's argument that photos of other suspects with the nickname "Boom" should have been included in the photo lineup is unsupported in the jurisprudence. In State v. George, 570 So.2d 46 (La.App. 5th Cir.1990), the court found that the fact that another suspect was not included in the lineup did not make the lineup unduly suggestive. There was no testimony that Martin and Jackson knew other persons who used the nickname, "Boom," who could be confused with Lee.
Therefore, after viewing the display and carefully considering the testimony of Martin, Jackson, and the officer concerning the selection of the lineup pictures and how it was conducted, we discern no suggestiveness in the pictures or the procedures used for conducting the lineup. *365 Therefore, misidentification of the defendant was unlikely. This assignment of error is meritless.

Habitual Offender Law
Lee asserts three assignments of error pertaining to his conviction as a habitual offender. Lee first argues that his prior felony convictions in 1993 and 1995, both of which resulted from guilty pleas, cannot be used as predicate offenses by the state to support its Habitual Offender Bill of Information, because the appropriate transcripts thereof were not introduced by the state at the habitual offender hearing. Lee argues that while the minute entries for the prior convictions produced by the state did disclose that Lee was represented by counsel and advised of his Boykin rights, they did not reflect the specific enumeration of Boykin rights required for the state to prove the predicate felonies. Nevertheless, the transcript of the habitual offender hearing discloses that, after defense counsel objected to the state's introduction of Exhibits S-2 (the minute entries for Lee's 1993 felony conviction) and S-4 (the minute entries for Lee's 1995 felony conviction) on the ground that they did not contain a complete transcript, she subsequently introduced the transcripts herself as Exhibits D-1 and D-2. We have reviewed the state's offering of proof and the complete transcripts of the Boykin hearings and find that Lee's guilty plea for each of the predicate offenses was valid.
In State v. Shelton, 621 So.2d 769, 779 (La.1993), the Louisiana Supreme Court discussed the state's burden of proof in a habitual offender proceeding:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
To prove the existence of the prior pleas, the state introduced the following evidence: (1) a 1993 bill of information charging Lee with committing the offense of possession of a Schedule II, controlled dangerous substance; (2) the certified minute entries showing that Lee pled guilty on December 15, 1993 to the possessory offense, at which time he was said to be represented by counsel and advised "of his constitutional rights per Boykin v. Alabama;" (3) a bill of information charging Lee with committing the offenses of attempted first degree murder and attempted second degree murder; and (4) the certified minute entries showing that Lee pled guilty on October 6, 1995 to attempted first degree murder, at which time he was said to be represented by counsel and *366 advised "of his constitutional rights per Boykin v. Alabama." This evidence was sufficient to meet the State's initial burden of proof under Shelton.
Lee's second assignment of error pertaining to the habitual offender conviction contends that Lee's guilty plea to attempted first degree murder is invalid because there was no factual basis stated for the crime during the guilty plea colloquy. When a guilty plea is otherwise voluntary, there is no necessity to ascertain a factual basis for that plea unless the accused protests his innocence or for some other reason the trial court is put on notice that there is a need for such an inquiry. In that event, due process requires a judicial finding of a significant factual basis for the defendant's plea. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); State v. Linear, 600 So.2d 113 (La.App. 2d Cir.1992).
Ignoring the above law, Lee argues that the district attorney's restatement of the facts of the attempted first degree murder was not sufficiently detailed so as to reveal an essential element of the crime, when Lee made no protestation of innocence nor gave any indication that he was innocent of the crime. Accordingly, Lee's attempt to raise a problem with his prior guilty plea under Alford has no merit.
Finally, Lee argues that his attorney's failure to object to the state's habitual offender bill in writing constituted ineffective assistance of counsel. In support of this assertion, Lee gives no explanation of the substance of any defense that counsel should have raised in a written objection. Unlike State v. Jones, 29,805, 29,806 (La. App. 2d Cir.9/24/97), 700 So.2d 1034, writ denied, 99-2487 (La.2/18/00), 754 So.2d 961, a deficiency in the state's proof at the hearing for the habitual offender bill did not occur in this case, and the colloquies of the prior Boykin hearing were reviewed by the trial court and contain no errors.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La.App.2d Cir.1/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14. Accordingly, if there is anything outside the record which Lee may raise regarding his representation in the habitual offender proceeding, he may do so with an application for post-conviction relief.

Excessiveness of Sentence
Lee argues that his life sentence is unconstitutionally excessive. He argues that several mitigating factors are present in this case. He notes that the victim did not suffer serious physical harm. He also asserts that his youth (age twenty-four) makes him a possible candidate for rehabilitation.
At the sentencing hearing in this case, while observing that a life sentence was mandatory, the trial court specifically reviewed the facts surrounding the crime noting that the victim had been injured by the defendant and that a weapon had been used in the offense. The trial court found no mitigating factors present. Following the sentence, Lee filed a motion to reconsider sentence, asserting only that the life sentence was excessive and unconstitutional. Lee made no specific assertions nor did he seek to present any evidence. The trial court issued a written ruling finding the life sentence constitutional, citing State v. Dorthey, 623 So.2d 1276 (La.1993).
*367 A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra. A sentence is deemed grossly disproportionate if, when crime and punishment are viewed in the light of harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).
The definition of criminal conduct and provisions for penalties from such conduct is a purely legislative function. State v. Norris, 32,941 (La.App. 2d Cir.3/1/00), 754 So.2d 362, writ denied, 00-1198 (La.2/16/01), 785 So.2d 838, and citations therein. Pursuant to this function, the legislature has enacted the habitual offender statute, which has been held to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Thus, the mandatory life sentence imposed by La. R.S. 15:529.1 is presumptively constitutional. Id. To rebut the presumption, the defendant must show clearly and convincingly that he is exceptional, i.e., that because of unusual circumstances, he is the victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, gravity of the offense, and circumstances of the case. Id. Although a mandatory sentence may be found constitutionally excessive, the supreme court has made it clear that such a finding should be rare, not commonplace. State v. Dorthey, supra.
In this case, the record does not show that Lee is "exceptional" under the test set forth in Johnson. Two of Lee's three felonies were crimes of violence. The present offense involved a battery upon the victim and the use of a handgun aimed at the victim's head. Lee was an adult at the time of all three convictions and his argument regarding his age is unpersuasive. Therefore, the defendant has failed to rebut the presumption that his mandatory life sentence is constitutional. Accordingly, this assignment of error lacks merit.

Decree
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.