868 So.2d 256 (2004)
STATE of Louisiana, Appellee,
v.
Jackie V. LEE, Appellant.
No. 38,114-KA.
Court of Appeal of Louisiana, Second Circuit.
March 3, 2004.
*258 Louisiana Appellate Project by Margaret S. Sollars, for Appellant.
Paul J. Carmouche, District Attorney, Hugo Holland, Lisa Rule, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before BROWN, DREW and MOORE, JJ.
MOORE, J.
Jackie V. Lee was indicted on one count of aggravated rape and four counts of armed robbery arising from a drug-related home invasion in Shreveport's Ingleside neighborhood. A unanimous jury found him guilty as charged on all counts. He was later adjudicated a third felony offender and sentenced to 105 years at hard labor on the first armed robbery and 45 years each on the other three armed robberies, all without benefits and to be served concurrently. On the aggravated rape charge, he was sentenced to life at hard labor without benefits, to be consecutive to the other sentences. He now appeals, advancing three assignments of error through the Louisiana Appellate Project and three assignments pro se. For the reasons expressed, we affirm.

Factual Background
Shortly before 5 a.m. on Tuesday, May 11, 1999, three men (later identified as brothers Joseph and Lonnie Little, and defendant Jackie Lee) broke into a house on Queen's Highway. Lee kicked in the front door and all three rushed in, demanding drugs and money from the four occupants of the house. All the assailants were wearing bandanas over the lower portion of their faces.
Jason Stewart, who was sleeping on a couch near the front door, testified that one of the assailants, armed with a chrome revolver, demanded money at gunpoint and then knocked him out; the assailants dragged him into the kitchen and then into the bathroom. Jason testified that Michael Murdoch (initially identified as Jason's brother), who was sleeping on a smaller couch in the front room, was also hit in the head and dragged to the bathroom. The actual tenant of the house, Merrick Hines, was sleeping in the bedroom with his 18-year-old girlfriend, P.L., when they heard the commotion in the front room. One of the assailants, carrying a machete, burst into the bedroom; Hines recognized him as Joseph Little. Joseph held Hines at knifepoint, demanded his "money and dope," and marched him into the bathroom. The assailant carrying the chrome revolver then entered the bedroom, struck P.L. in the mouth with the weapon, and raped her at gunpoint; then Joseph returned to the *259 bedroom and raped her at knifepoint. While this was occurring, the other men ransacked the house for drugs and cash; finding no drugs, they took about $300, a Nintendo 64 and some games from the entertainment center in the bedroom; also missing were a ring and necklace from the bedroom and about $20 from Jason Stewart's pants, which had been draped on a table in the front room. Finally, the assailants shut all four victims in the bathroom and fled.
Hines immediately identified Joseph Little as one of the assailants, and testified that he knew Jackie Lee well from having been in jail with him twice. Shortly after the incident, he told Officer Brown that Lee had raped P.L. He added that he, Lee, Lonnie Little and Jason Stewart were all in the same gang, the Rolling Sixties Crips. He admitted he was known "on the street" for selling marijuana, but was not doing so on May 11.
Police prepared three photo lineups; Hines selected Lee and Joseph Little as two of the assailants; he could not pick Lonnie Little out of the third lineup. P.L. selected Lee out of the first lineup, but did not know his name and testified she had never met Lee before that morning. The other two victims, Jason Stewart and Michael Murdoch, did not identify any of their assailants. However, a lady who lived across the street, Felicia Simpson, testified that her dog woke her up early that morning. She looked out her window and saw three men walk up to the house, kick the door in and enter; later, she saw them leave, carrying a plastic grocery bag with perhaps a video game in it. She recognized all three men as being from the neighborhood, and positively identified Lee, Joseph and Lonnie Little from the photo lineups.
Based on this information, Detective Wray obtained arrest warrants for Lee and the Littles. Lee was arrested three days later in Richmond, California, when he went to a police station and used a false name to ask for directions to a relative's house. Richmond Police detained him after Lee's cousin told them Lee was wanted for a crime in Shreveport. Lee waived extradition and returned to Louisiana. The Littles were apprehended separately in Dallas, Texas nearly two months later. None of the stolen items or weapons were ever recovered.
The state indicted Lee and the Littles on four counts of armed robbery, and Lee and Joseph Little on one count of aggravated rape. The Littles' charges were severed and Lee proceeded to jury trial in November 2002.[1] In addition to the evidence outlined above, DNA analyst Dr. Pat Wojtkiewicz testified that a vaginal swab taken from P.L. shortly after the crime contained sperm with DNA consistent with Lee. The chances that the sperm came from a black male other than Lee were one in 553 quadrillion. He also testified that a condom recovered from the floor of the bedroom contained epithelial tissue with DNA also consistent with Lee, yielding the same infinitesimal odds of coming from any other black male.[2]
Lee took the stand in his own defense, testifying that he did not go to the Queen's Highway house on the morning of May 11, and knew nothing about the crime. However, he admitted that he knew all the victims, had bought marijuana from Jason *260 Stewart in the past, and had done time with Hines. He maintained that he had consensual sex with P.L. the morning before this incident at his cousin Charles Taylor's house in the Mooretown neighborhood. Lee claimed this was retribution, as Hines had made a pass at Lee's girlfriend, Denise Gates (he did not specify when); he also asserted that P.L.'s brother murdered Charles Taylor a year later. He admitted he never reported this homicide. He also claimed he had been in Hines's bedroom the night before the crime, to have sex with a girl called Stacy (he did not know her last name); Lee said this was when he dropped the soiled condom on the floor.
Lee was found guilty as charged on all counts and later adjudicated a third felony offender. As noted above, he was sentenced to 105 years at hard labor on the third-felony armed robbery, concurrent 45-year sentences on the other armed robberies, and a consecutive life sentence for aggravated rape, all without benefits.

Discussion: Sufficiency of the Evidence
By his second assignment of error, Lee urges the evidence was insufficient to establish beyond a reasonable doubt that he committed these crimes. He argues that testimony of all the state's witnesses was so tainted by lies and riddled with inconsistencies that no rational fact finder could have accepted their version of events. He also contends that the evidence does not support the finding that an aggravated rape occurred, as his DNA on P.L.'s vaginal swab is explained by their consensual sex the morning before; also, the DNA evidence exonerates him because there was none of P.L.'s DNA on the condom recovered from the bedroom floor. Finally, he suggests that no armed robbery occurred because two of the victims, Jason Stewart and Michael Murdoch, did not report anything missing, and the initial police report listed the incident as an aggravated burglary.
The standard of appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The Jackson standard applies both to direct and circumstantial evidence. State v. Marcantel, XXXX-XXXX (La.4/3/02), 815 So.2d 50. In the recent case of State v. Davis, XXXX-XXXX (La.6/27/03), 848 So.2d 557, the supreme court reiterated:
[T]he task of an appellate court reviewing the sufficiency of the evidence is not to second-guess the credibility choices of the trier of fact "beyond * * * sufficiency evaluations under the Jackson standard of review." State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). A victim's or eyewitness's testimony alone is therefore usually sufficient to support a verdict. State v. Bright, 98-0398, p. 24 (La.4/11/00), 776 So.2d 1134, 1148 [additional citations omitted].
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022. The trier of fact may accept or reject, in whole or in part, the *261 testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27; State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. When the defendant claims that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry the burden of proof. State v. Powell, 27,959 (La.App. 2 Cir. 4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Lee has pointed out various inconsistencies between the witnesses' initial statements to police and their trial testimony.[3] He seriously questions Ms. Simpson's ability to identify him, since she maintained he was wearing a red baseball cap, a distinctive item not noticed by any other witness. He also challenges Hines's ability to identify him, since the assailant's face was partly concealed with a bandana. He contends the state's witnesses were generally not credible, as Ms. Simpson claimed to be unaware of drug dealings in the house; Jason Stewart denied being a member of the Rolling Sixties Crips, but other witnesses confirmed that he was; and Merrick Hines was an admitted drug dealer and gang member.
The jury heard, however, Ms. Simpson's testimony that she knew the assailants and gave their names to the police. The jury also heard Hines's testimony that he was very close to Joseph Little, he knew Jackie Lee from doing time together with him, and all were in the same gang. Positive identification by two witnesses who knew the defendant very well was sufficient to exclude any reasonable probability of misidentification. State v. Powell, supra. P.L. also selected Lee from a photo lineup. This evidence is sufficient to support the finding that Lee was one of the assailants. State v. Davis, supra.
As to the particular offenses, Lee urges the state failed to prove he committed an aggravated rape of P.L., citing his own testimony that the two had consensual sex the day before. He argues that the prior encounter explains the presence of his DNA on the victim's vaginal swab, and submits that the absence of the victim's DNA from the condom found on the bedroom floor proves that it was not used to penetrate her.
P.L. testified that she had never seen Lee before the morning of May 11. Believing her, the jury was entitled to reject Lee's claim of a prior, consensual encounter. Moreover, the jury could rationally conclude from the DNA evidence that Lee first put on the condom, leaving some epithelial cells but no sperm, removed and tossed it to the floor, and then raped P.L., depositing his sperm DNA to be traced on the vaginal swab. There was absolutely no evidence to support Lee's claim of consensual sex with P.L. the morning before the crime, or his facially implausible story of taking Stacy into Hines's bedroom just hours before. Lee disputed neither his criminal record, his drug activity nor his gang affiliation, thus permitting the jury to discredit his self-serving testimony. We find no basis to disturb the jury's rational credibility determinations and verdict that *262 Lee committed the aggravated rape of P.L.
Finally, Lee urges the state failed to prove that he committed the armed robberies, as neither Jason Stewart nor Michael Murdoch reported that anything had been taken from them, and the police initially wrote up the offense as an aggravated burglary. He suggests that this defeats the essential element of "taking of anything of value." La. R.S. 14:64.
P.L., however, testified that she saw "the guy with the gun" take a Nintendo game and about $200 of Hines's money from the entertainment center in the bedroom. This is direct evidence of a taking. Jason Stewart and Merrick Hines both testified that all three assailants burst in and demanded money. They did not actually observe a taking, but after the assailants ransacked the house, Stewart discovered $20 missing from his pants pocket, and Hines reported a ring and necklace missing from his bedroom. The demands for money and rifling through the house, followed by the disappearance of money and other items, are circumstances that support the finding that Lee took things of value from the victims. Finally, Hines was positive that Lee was wielding a large gun, thus satisfying the "dangerous weapon" element of the offense. Any rational trier of fact could have found every essential element of the offenses of armed robbery.[4]
This assignment does not present reversible error.

Photographic Lineup
By his first assignment Lee urges the district court erred in denying his motion to suppress the photographic lineup. He contends the lineup was unduly suggestive because his photo depicted an upper body image, while the others were just faces; he also suggests that Merrick Hines and Ms. Simpson could have told P.L. which photo to pick. Finally, he urges that P.L.'s identification was unreliable because she did not know him prior to the rape and, at any rate, her rapist never removed his mask.
The defendant has the burden of proof on a motion to suppress an out-of-court identification. La.C.Cr.P. art. 703 D. In State v. Bright, supra, the supreme court summarized the applicable law:
An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. State v. Neslo, 433 So.2d 73, 78 (La.1983); State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. State v. Smith, 430 So.2d 31, 43 (La.1983); State v. Guillot, 353 So.2d 1005, 1008 (La.1977). The question for the reviewing court is to determine whether the procedure is so conducive to irreparable misidentification that due process was denied. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); State v. Martin, 595 So.2d 592, 595 (La.1992); State v. Prudholm, 446 So.2d 729, 738 (La.1984). A defendant attempting to suppress an identification *263 must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738; State v. Chaney, 423 So.2d 1092, 1098 (La.1982).
Factors considered in assessing the reliability of the identification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his or her prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, supra; State v. Turner, 37,162 (La.App. 2 Cir. 10/29/03), 859 So.2d 911.
On review of a trial court's ruling on a motion to suppress, the appellate court is not limited to evidence adduced at the hearing on the motion, but may also consider pertinent evidence presented at trial. State v. Turner, supra, and authorities therein.
P.L. was not the only witness to identify Lee. Merrick Hines and Ms. Simpson, both of whom knew Lee before this incident, immediately and positively identified him as one of the assailants. They testified that he was the one carrying the gun; P.L. also identified Lee as the armed assailant. All the other witnesses described Lee as "stocky" or "heavy set"; P.L. told police her rapist was "fat." Although Lee's face was partly obscured by a mask, P.L. had no choice but to pay close attention to him during the whole sordid criminal episode; this strongly supports her identification. State v. James, 592 So.2d 867 (La. App. 2 Cir.1991). The district court was not plainly wrong to find that P.L.'s identification met the Manson v. Brathwaite factors.
We have closely reviewed the lineup. Contrary to Lee's assertion in brief, his photo (# 5) is not the only one depicting upper body or shoulders; photo # 2 is a similar wide shot. Photo # 6 is a close-up. All photos are the same size; the fact that the defendant's image is slightly smaller (or larger) than the rest does not make the procedure suggestive. State v. Lee, 35,333 (La.App. 2 Cir. 1/23/02), 807 So.2d 359, writ denied, XXXX-XXXX (La.1/31/03), 836 So.2d 60; State v. Johnson, XXXX-XXXX (La. App. 1 Cir. 12/22/00), 775 So.2d 670, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1066. This lineup does not draw special attention to Lee and is not suggestive.
Finally, there is no record evidence to support Lee's suggestion that P.L. "could not have known who raped her at that time unless she had been told which picture to look for." Although Detective Harlow did not state when he showed the lineup to P.L., no one testified that Hines (or anyone else) influenced her or tainted her identification. We decline to indulge this speculation. The district court did not err in finding the identifications reliable. This assignment does not present any error.

Reference to Lee's Post-Arrest Silence
By his third assignment, Lee urges reversible error occurred when the state made references to his right to remain silent. He argues that the state wrongly sought to impeach his exculpatory account, told for the first time at trial, by exploiting his failure to give similar information after receiving his Miranda warnings at the time of arrest, in violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
On direct examination, Lee testified that he and P.L. had consensual sex the morning before the crimes at his cousin Charles Taylor's house in Mooretown, but that Charles Taylor had been killed in July *264 2000. He justified his activity with P.L. by explaining that Merrick Hines had previously made a pass at his (Lee's) girlfriend, Denise Gates. He also testified that the night before the crimes, he went to Hines's house, smoked marijuana, and took Stacy into the bedroom and attempted to have sex with her; that was when he dropped the soiled condom that was found to contain his DNA.
On cross examination, the prosecutor asked Lee why he did not give a statement to Detective Wray after he agreed to be extradited; over objection, the prosecutor asked why this information was never provided to the police to verify Lee's alibi. Lee explained that at the time, he was charged with only a parole violation. The prosecutor remarked that Charles Taylor was dead, and no effort had been made to locate Denise Little or the woman called Stacy; there were no witnesses to verify Lee's story. On redirect, Lee added that he thought those people had nothing to do with the crime, and maintained that he chose to exercise his Miranda rights. In summation, the prosecutor reiterated that Lee's trial testimony was unbelievable because, in part, Lee "had the chance to give the explanation, but * * * didn't." After the jury retired, the district court said it overruled the defense objection because defense counsel had "opened the door" by earlier asking Detective Wray whether Lee made any statement.
The state maintains that despite his objection, Lee never requested an admonishment or mistrial under La.C.Cr.P. art. 770(3). The state also contends that even if its line of questioning was improper, this constituted trial error (as opposed to "structural error") and is subject to harmless error analysis. Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); State v. Iverson, 37,369 (La.App. 2 Cir. 9/24/03), 855 So.2d 835. Given the balance of overwhelming evidence against Lee, and the fact that he opened the door to the inquiry, the state submits that the verdict was "surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94.
Lee has correctly identified a violation of Doyle v. Ohio, supra. A prosecutor cannot make reference to the fact that an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused for the first time at trial. State v. Arvie, 505 So.2d 44 (La. 1987); State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207. Moreover, the fact that Lee opened the door on direct examination to offer reasons for his silence is not sufficient to cleanse the impermissible references to his silence on cross examination and in closing argument. State v. Crotwell, 2000-2551 (La.App. 1 Cir. 11/9/01), 818 So.2d 34.
The error, however, arose in the presentation of evidence to the jury. The supreme court explained in Brecht v. Abrahamson, supra:
Under the rationale of Doyle, due process is violated whenever the prosecution uses for impeachment purposes a defendant's post-Miranda silence. Doyle thus does not bear the hallmarks of a prophylactic rule.
Instead, we think Doyle error fits squarely into the category of constitutional violations which we have characterized as "`trial error.'" Trial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may... be quantitatively assessed in the context of other evidence presented in *265 order to determine [the effect it had on the trial]." At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by `harmless-error' standards." The existence of such defectsdeprivation of the right to counsel, for examplerequires automatic reversal of the conviction because they infect the entire trial process. Since our landmark decision in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), we have applied the harmless-error-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.
507 U.S. at 629-630, 113 S.Ct. at 1717 (internal citations and footnotes omitted).
Applying this standard, we find no reversible error. We will not belabor the sufficiency of the evidence already analyzed in extenso. Three victims graphically described Lee's violent criminal acts. Merrick Hines and P.L. positively identified him as the perpetrator; an independent witness, Ms. Simpson, also identified him and provided incriminating testimony. The DNA evidence was strong enough to eliminate any other person from the accusation of rape. Lee's serious credibility problems, coupled with the absence of objective evidence, neutralized his claims of innocence. The evidence of guilt was so overwhelming that the prosecutor's questions, though improper, cannot possibly have tainted the verdict. In short, the verdict was "surely unattributable to the error." State v. Iverson, supra; State v. Crotwell, supra; State v. Olivieri, supra.
This assignment does not present reversible error.

Pro Se Assignments
By his first pro se assignment, Lee urges the district court erred in accepting a defective verdict form that was not signed by the foreman of the jury. However, the signature of the jury foreman, Mr. Huckabee, clearly appears on the back of each verdict form, along with the handwritten verdict, in complete compliance with La.C.Cr.P. art. 810. This argument is devoid of merit.
By his second pro se assignment, Lee urges the district court erred in accepting an illegal indictment in that the minutes do not reflect that it was brought in open court by the grand jury. However, the indictment is clearly indorsed "a true bill" by the grand jury foreman and the record plainly indicates that it was brought in open court, in full compliance with La. C.Cr. P. arts. 382 A, 383. This argument is devoid of merit. State v. Mills, 505 So.2d 933, 941 (La.App. 2 Cir.), writ denied, 508 So.2d 65 (1987).
By his third pro se assignment, Lee urges the district court erred in overruling defense counsel's objection to "introducing a firearm that was not used in the crime." Lee urges this demonstrative evidence was inflammatory and extremely prejudicial to his defense and mandates reversal. State v. Manieri, 378 So.2d 931 (La.1979).
It is error to introduce into evidence weapons which are allegedly "similar" to the ones used in the crime. State v. Manieri, supra. In the case sub judice, the prosecutor showed the witnesses two weapons (a Smith & Wesson Model 629 stainless steel .44 mag. and a Ruger Model SP 101 stainless steel .357 mag.).[5] All witnesses replied that the larger gun resembled *266 the one used in the crime. The state did not introduce these into evidence but offered them solely for the demonstrative purpose of showing that the victims could hear the weapon being clicked, thus proving the element of intimidation. This is an appropriate use of demonstrative evidence. State v. Duncan, 99-0778 (La.App. 4 Cir. 4/19/00), 761 So.2d 586; State v. Hawkins, 97-726 (La.App. 3 Cir. 10/29/97), 702 So.2d 1121, writ denied, 97-2976 (La.4/3/98), 717 So.2d 230. This assignment does not present reversible error.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed, we affirm Jackie V. Lee's convictions, third felony offender adjudication and sentences.
AFFIRMED.
NOTES
[1] Prior to trial, Lee declined a plea bargain for 40 years at hard labor on a responsive plea of forcible rape and 45 years at hard labor on one count of armed robbery, all without benefits, but to be concurrent.
[2] Dr. Wojtkiewicz testified that the historical world population, or total number of humans ever born, was only 20 to 30 billion.
[3] Specifically, Merrick Hines did not tell the police that the assailants were looking for drugs, only money, but testified they demanded both; Jason Stewart told police that Michael Murdoch was actually his brother, "Michael Stewart"; both initially described the gun as black, but testified it was chrome; neither of them initially said anything was taken from the house; and P.L. gave the police a different description of her "position" in the first rape than she described at trial. Michael Murdoch did not testify at trial.
[4] Lee does not argue that the jury could have found only one armed robbery rather than four. In the absence of an objection or a showing of prejudice (all four sentences were made concurrent), there is no error. State v. Davis, 336 So.2d 805 (La.1976). He also does not contest the finding that the things of value were taken "from the person of another or * * * the immediate control of another." The victims exercised sufficient control over the money and other items taken that, absent violence or intimidation, they could have prevented the taking. State v. Long, 36,167 (La. App. 2 Cir. 10/30/02), 830 So.2d 552, and citations therein.
[5] The district court initially sustained the objection, when the state showed Jason Stewart only the Smith & Wesson.