MARION F. EDWARDS, Judge.
 

 | gDefendant-appellant, Robert Longo (“Longo”), challenges his conviction of possession of pornography involving juveniles. He was charged with a violation of LSA-R.S. 14:81.1, and, following a plea of not guilty, he proceeded to trial. A unanimous twelve-person jury found him guilty as charged, and he was ultimately sentenced to three years in the Department of Corrections without the benefit of parole, probation, or suspension of sentence.
 

 The facts of the case were adduced at trial. In early March 2005, Longo, who was a Kenner police officer, reported to the Kenner Police Department the rape of his fifteen-year-old daughter by a person she met on the internet. Detective George Hoffmann (“Detective Hoffmann”), a friend of Longo’s, was assigned to investigate the case. In connection with the investigation, Longo consented to the search of his home computer as it was believed the identity of the perpetrator who committed the assault could be ascertained from reviewing the computer for internet photographs and chat room texts.
 

 laLongo’s computer was removed from his home and a forensic examination of the computer was performed. Detective Hoff-mann testified that an image of child pornography was discovered during a search of the computer. At the discovery of the image, the consent search stopped, and Detective Hoffmann applied for and obtained a search warrant of the computer. Execution of the search warrant revealed a total of twenty-five images of child pornography on Longo’s computer. Detective Hoffmann advised Longo of the discovery of the pornographic images, then informed him that he was under investigation for child pornography, advised him of his rights, and took his statement. In his statement, Longo admitted downloading three pictures of child pornography but stated he thought he just accidentally downloaded them. He described one photo as having one nude female and two nude males who appeared to him to be about fifteen or sixteen years old.
 

 The day after his statement, Detective Hoffmann again advised Longo of his rights and proceeded to show him the twenty-five images that were found on his computer. Unlike his first statement, this “interview” was not recorded. During the interview, Detective Hoffmann individually reviewed the twenty-five images with Lon-go and inquired whether he downloaded or recognized the image. At that time, Lon-go admitted he recognized some of the images and further admitted he downloaded some of the images. As a result of this interview, Detective Hoffmann sought an arrest warrant, and Longo subsequently turned himself in.
 

 At trial, the evidence showed the twenty-five images of child pornography were found on Longo’s computer, which at one time was the family computer. Although his ex-wife, son, and daughter had access to the family computer at one time, all the images were found in a Yahoo Messenger account under the profile of “Mounted 42.” Longo admitted at trial that he had a Yahoo Messenger account Rwith. that
 
 *669
 
 screen name and agreed that the account could not be accessed without a password. However, he testified that it was common knowledge that the password to his account was taped under the computer keyboard.
 

 Longo’s son, Anthony, testified that everyone in the family knew passwords were taped under the keyboard. However, Anthony stated he did not have access to his father’s Yahoo account, did not know his father’s password, had never used his father’s user name or password, and had never downloaded pornography onto the computer. Conversely, defendant’s daughter testified that she did not know where her father kept his password. She further testified that she did not know her father’s user name and had never used his Yahoo account. Although Longo’s daughter admitted getting photographs of naked boys her age off the computer, she stated she never downloaded child pornography.
 

 Longo’s ex-wife also testified. She stated she did not know Longo’s Yahoo user name or password and denied that he kept the information under the keyboard or in an easily accessible location. She further testified she did not download child pornography but explained Longo had downloaded pornographic images in front of the children in the past. The record shows Longo’s ex-wife’s computer, to which Lon-go’s daughter had access, was searched and no images of child pornography were found.
 

 According to the evidence, nineteen of the twenty-five photographs at issue had a date of October 2, 2004, between 4:39 pm and 11:50 pm. Anthony testified that, on October 2, 2004, his father was with his girlfriend at a birthday party for most of the evening. Several other witnesses also testified as to Longo’s presence at the party.
 

 The State’s forensic computer expert, Detective Mark Ortiz (“Detective Ortiz”), testified that the “creation” date of the images was not indicative of the ^download date. He noted that the images could have been on the computer prior to the “creation” date indicated. The images copied by Detective Ortiz were in a read-only format, which could not be altered, only viewed. At least nine of the images depicted juveniles, identified through the National Center for Missing and Exploited Children’s database, as being under the age of seventeen. A copy of a report from the Center was admitted into evidence. Detective Ortiz testified that the manner in which the images were saved indicated that the files could not have been merely “pop-ups,” which would have been temporary internet files. Rather, they were images located in an account that required the user, after accessing the account with his password, to actively accept the file before the file could be moved and stored in a location associated with the user’s profile. He also explained that the user could decline the images at which point they would not be stored under the user’s profile.
 

 Longo’s computer expert, William White, agreed that the date and time on a computer can be changed with relative ease without any trace that a change was made.
 

 Longo testified at trial that, during the non-taped interview with Detective Hoffman, when he responded that he “recognized” some of the images, he was answering that he remembered seeing the photos and that he recognized them as being child pornography. He denied intentionally downloading and keeping them.
 

 Longo argues there was insufficient evidence to convict him because the State failed to prove the identity of the perpetrator beyond a reasonable doubt.
 
 *670
 
 Specifically, he contends the State failed to prove he was the person who downloaded the images of child pornography, which were found on a family computer to which his ex-wife, son, and daughter had access. He maintains his ex-wife had a motive to download the images and suggests she set him up because |Rthey were involved in a bitter custody battle over their daughter. Longo further asserts he had an alibi for the day most of the images were downloaded, which proved he was not home at the time of the downloads.
 

 The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 [1]
 
 As a general matter, when the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification.
 
 [2]
 

 Longo claims the State failed to prove he was the person who downloaded the images and argues three other people had access to the computer on which the child pornography images were found. However, the three people who Longo alleged had computer access testified at trial and all three denied knowing or using his user name or password to the account where the images were found. Longo’s transcribed statement and Detective Hoff-mann’s testimony showed that he admitted to downloading several of the images. Detective Hoffmann testified that Longo never indicated anyone else may have downloaded the images or attempted to clarify the situation. Although Longo argues he had an alibi on the day most of the images were downloaded, his alibi is not determinative of the issue of whether he had an opportunity to download and possess the images at issue.
 

 The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the [ 7eyidence.
 
 [3]
 
 It is apparent that, after considering the credibility of the witnesses and weighing the evidence, the jury did not believe Longo’s account that someone else downloaded the child pornography images.
 

 Further, Longo suggests that he downloaded the images accidentally and, therefore, the State failed to prove he intentionally possessed them. LSA-R.S. 14:81.1(A)(3) defines the offense of possession of child pornography as “[t]he intentional possession ... of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.” The words “intentional possession,” taken in their usual sense, mean that the individual knowingly and voluntarily possessed the pornography, in contrast to circumstances where a person downloads images from the internet without realizing that some images included in the download were child pornography.
 
 [4]
 
 Longo’s recorded
 
 *671
 
 statement shows that he was aware of the images under investigation at that point and that he had not deleted them.
 

 In addition to the images themselves, there was evidence of Longo’s participation in several lascivious internet chat rooms. The texts of the chats under Lon-go’s user name, “Mounted 42,” revealed several references to the swapping of pictures involving juveniles. This evidence, coupled with the discovery of twenty-five different child pornography images with different creation, modification, and access dates spanning over several months was sufficient for a rational trier of fact to conclude Longo did not accidentally download the child pornography but, rather, that he intentionally possessed the images. Viewing the evidence in the light most favorable to the prosecution, the State proved the elements of Longo’s possession of pornography involving juveniles beyond a reasonable doubt.
 

 |sLongo also urges that, during trial, the State made two impermissible references to his post-arrest silence. He asserts the trial court erred in refusing to grant his two motions for mistrial on this basis and refusing to admonish the jury.
 

 On the first day of trial, Detective Hoff-mann testified that defendant gave one taped statement and one unrecorded interview, after being advised of his rights but before he was arrested. Detective Hoff-mann explained that, after the interview, he obtained an arrest warrant and defendant subsequently turned himself in. Thereafter, the following exchange occurred between the prosecutor and Detective Hoffmann:
 

 Q. Okay. And after Mr. Longo turned himself in, did you again seek to take a statement from him?
 

 A.. Yes, I did.
 

 Q. And did you advise him of his rights?
 

 A. Yes, I did.
 

 Q. Did you present to him a waiver of rights form?
 

 A. Yes, I did.
 

 Q. I show you what’s been marked for identification as State’s Exhibit 10. Can you identify that document?
 

 A. Yes. It’s a Kenner Police Department advice of rights form.
 

 Q. And did you advise Mr. Longo of his rights after he was arrested?
 

 A. Yes, I did.
 

 Q. And what was the date on that form?
 

 A. 4/26 of 'D05.
 

 Q. And did Mr. Longo waive his rights?
 

 A. No, he did not.
 

 Defense counsel objected and moved for a mistrial on the basis of the State’s impermissible reference to Longo’s exercise of his right to remain silent. The State argued that it was simply a reference to Detective Hoffmann’s investigation. The trial court denied the motion for a mistrial and instructed the prosecutor “don’t go there any more [sic].” Thereafter, defense counsel began cross-examination.
 

 The United States Supreme Court has held that reference to a defendant’s silence at the time of his arrest and after he received the
 
 Miranda
 
 warnings, for | flimpeachment purposes, violates the defendant’s due process rights.
 
 [5]
 
 The Supreme Court explained that “every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested ... it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s
 
 *672
 
 silence to be used to impeach an explanation subsequently offered at trial.” Under
 
 Doyle,
 
 a prosecutor cannot make reference to the fact an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused for the first time at trial.
 
 [6]
 

 In contrast, an oblique and obscure reference to a defendant’s post-arrest silence, where the examination does not stress the right to remain silent or attempt to elicit testimony regarding the defendant’s failure to respond to police questioning, does not constitute reversible error.
 
 [7]
 
 Thus, the State may pursue a line of questioning that attempts to summarize the extent of the investigation, when such questions are not designed to exploit the defendant’s failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense.
 
 [8]
 
 Under LSA-C.Cr.P. art. 771, when the prosecutor or a witness makes a reference to a defendant’s post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. In such cases where the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant.
 
 [9]
 
 The granting of a mistrial is within the discretion of the trial court if the trial court |10is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 
 [10]
 
 A brief reference to a defendant’s post-arrest silence does not mandate a mistrial or reversal when the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes.
 
 [11]
 

 In the present case, the State questioned Detective Hoffmann regarding the sequence of events occurring from the time of the initial investigation through the time of Longo’s arrest. On review, it does not appear that the reference to Longo’s post-arrest silence was used to ascribe a guilty meaning to the silence or for impeachment purposes. Rather, the State’s line of questioning directed to the investigating officer appears designed to elicit from the officer a description of how the police investigation culminated.
 
 [12]
 
 As in
 
 Kersey,
 
 the defendant was advised of his
 
 Miranda
 
 rights and then willingly answered a succession of questions. The reference to defendant’s post-arrest silence “arose at the close of the officer’s testimony and was more a way of exploring how the interrogation was concluded than an effort to call attention to the silence.” Thus, the trial court did not err in denying Longo’s motion for a mistrial at that point.
 

 Longo also challenges the prosecutor’s reference to his post-arrest silence made when she cross-examined him. During the State’s cross-examination on the
 
 *673
 
 last day of trial, Longo indicated that he did not know he was under investigation for child pornography when he waived his rights and talked with Detective Hoffmann prior to his arrest. He stated that other people had access to his computer and suggested that someone other than himself downloaded the images. Longo testified that he did not tell Detective Hoffmann about these things during his pre-arrest statement. The State then inquired into the advice of rights form | u Longo executed upon his arrest and attempted to establish that he was aware he was the subject of the child pornography investigation. The following exchange occurred:
 

 Q. Okay. And right after — do you recall Detective — not Detective Hoffmann, maybe — but do you recall another advice of rights form that you signed on April 26, 2005?
 

 A. April 26 would be the advice of rights where they told me I was arrested.
 

 Q. And at that particular point in time, you knew that you were arrested for child pornography, correct?
 

 A. I’m trying to remember whether it was Detective Hoffmann or one of the other officers advised me what I was being charged with.
 

 Q. And by then you really knew- — you stated back on April 18th and April 19th, you really didn’t know it was about you; that the investigation was about you. But you knew on April 26th it was about you, correct?
 

 A. I — yes, ma’am, when they scratched the little box that say[s] “You are arrested for.”
 

 Q. But instead of giving a statement on that date, you decided not to.
 

 Defense counsel objected and moved for a mistrial. The trial court commented to the prosecutor that “[y]ou cannot do that” but refused to grant a mistrial. The court further noted that it was concerned about making matters worse by bringing any more attention to the matter in front of the jury. It instructed the prosecutor, “do not — do not — I mean, that’s his Fifth Amendment Right. You cannot do that. Period.” Immediately thereafter, the prosecutor asked Longo: “after that time, did you go to Detective Hoffmann and tell him that Roslyn Cousins was behind all this?” Defense counsel again objected and moved for a mistrial on the basis the question was an indirect reference to Longo’s right to remain silent. The trial court denied the motion for a mistrial and told the prosecutor to “[j]ust go away to someplace else.”
 

 This second reference to Longo’s post-arrest silence is a violation of
 
 Doyle.
 
 It was an attempt by the State to discredit Longo’s theory that someone other than 112himself downloaded the images to his computer, exploiting his failure to claim his innocence after his arrest, especially in light of the fact that he gave statements prior to his arrest when he claimed he was unaware he was the target of the child pornography investigation.
 

 However, a
 
 Doyle
 
 violation is characterized as a trial error, which is amenable to a harmless-error analysis, as opposed to a structural error, which requires automatic reversal.
 
 [13]
 
 Harmless error exists when “the verdict actually rendered was surely unattributable to the error.”
 
 [14]
 
 Here, the sufficiency of the evidence has been discussed above. The evidence of Longo’s guilt was overwhelming, and we do not find that the prosecu
 
 *674
 
 tor’s question, albeit improper, could have tainted the verdict. In summary, the verdict was “surely unattributable to the error.”
 

 The record shows that the trial, as a whole, was conducted fairly and defendant’s guilt was overwhelming. Under these circumstances, a mistrial was not warranted. While Longo was entitled to an admonishment for the prosecutor’s improper remark, he did not request it. Nonetheless, the failure of a trial court to admonish the jury is considered harmless error when there is considerable evidence of the defendant’s guilt.
 
 [15]
 

 This assignment of error is without merit.
 

 We have examined the record for errors patent and find none that require action by this court.
 

 113For the foregoing reasons, the conviction is affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 

 [2]
 

 .
 
 State v. Draughn,
 
 2005-1825 (La.1/17/07), 950 So.2d 583;
 
 also see, State v. Ingram,
 
 04—551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923.
 

 [3]
 

 .
 
 State v. East,
 
 99-1379 (La.App. 5 Cir. 7/25/00), 768 So.2d 173, 177,
 
 writ denied,
 
 01-3025 (La. 10/25/02), 827 So.2d 1167.
 

 [4]
 

 .
 
 State v. Horton,
 
 42,199 (La.App. 2 Cir. 6/20/07), 962 So.2d 459, 466,
 
 writ denied,
 
 07-1819 (La. 1/25/08), 973 So.2d 755.
 

 [5]
 

 .
 
 Doyle v. Ohio,
 
 426 U.S. 610, 620, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
 

 [6]
 

 . State v. Robinson,
 
 04-964 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1126 (citing
 
 State v. Arvie,
 
 505 So.2d 44 (La.1987)).
 

 [7]
 

 .
 
 State v. Robinson, supra; State v. Ledesma,
 
 01-1413 (La.App. 5 Cir. 4/30/02), 817 So.2d 390.
 

 [8]
 

 .
 
 Id.
 

 [9]
 

 .
 
 Id.
 
 (citing
 
 State v. Kersey,
 
 406 So.2d 555, 559 (La.1981)).
 

 [10]
 

 .
 
 State v. Procell,
 
 365 So.2d 484, 491 (La.1978), ce
 
 rt. denied,
 
 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979).
 

 [11]
 

 .
 
 State v. Robinson, supra.
 

 [12]
 

 .
 
 See, State v. Kersey, supra; State v. George,
 
 95-110 (La. 10/16/95), 661 So.2d 975.
 

 [13]
 

 .
 
 See, State v. Lee,
 
 38,114 (La.App. 2 Cir. 3/3/04), 868 So.2d 256,
 
 writ denied,
 
 04-1128 (La. 10/8/04), 883 So.2d 1027 (citing
 
 Brecht v. Abrahamson,
 
 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).
 

 [14]
 

 .
 
 State v. Haddad,
 
 1999-1272 (La.2/29/00), 767 So.2d 682.
 

 [15]
 

 .
 
 State v. Olivieri,
 
 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 215 (citing
 
 State v. Jones,
 
 94-0926 (La.App. 4 Cir. 12/28/94), 648 So.2d 472, 480,
 
 writ denied,
 
 95-0272 (La.6/16/95), 655 So.2d 346;
 
 State
 
 v.
 
 Stelly,
 
 93-1090 (La.App. 1 Cir. 4/8/94), 635 So.2d 725, 729,
 
 writ denied,
 
 94-1211 (La.9/23/94), 642 So.2d 1309;
 
 State v. Smith,
 
 336 So.2d 867, 869-70 (La.1976)).